

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*970 Broad Street, Suite 700*                                        *(973)645-2700*
*Newark, NJ 07102*

December 2, 2004

Hon. Katharine S. Hayden
United States District Judge
U.S. Post Office & Courthouse Building
P.O. Box 999
Newark, New Jersey    07101-0999

      Re:  United States v. Hemant Lakhani
          Criminal No. 03-880

Dear Judge Hayden:

      This letter contains a number of in limine motions in
connection with the above-captioned trial, which is scheduled to
start on January 4, 2005.  The government respectfully requests
that these matters be addressed prior to opening statements.

1.  **Miscellaneous Items Related to Cooperating Witness**

      The government will call MR as a witness at trial.  MR
cooperated in the investigation and participated in the numerous
taped conversations and meetings that will be presented to the
jury.  MR served as an informant and received payment for his
services; he is not a cooperating co-conspirator.  MR will likely
face lengthy cross-examination concerning these payments, various
immigration-related benefits he and his family have received with
the assistance of law enforcement, and other matters.  These
areas are <u>not</u> the subject of this in limine application.  Beyond
these items, the government is aware of a number of issues
relating to MR which should not be inquired into on cross-
examination or referred to in opening argument.

      A.  <u>Failure to pay two months' rent.</u>  MR did not have

> Specific instances of the conduct of a witness,
> for the purpose of attacking or supporting the
> witness' character for truthfulness, other than
> conviction of crime as provided in rule 609, may
> not be proved by extrinsic evidence.  They may,
> however, in the discretion of the court, *if
> probative of truthfulness or untruthfulness*, be
> inquired into on cross-examination. . . .

(emphasis added).  By its very terms, the rule does not permit
questions about conduct that does not indicate a lack of
truthfulness.  This "principle is clear in most instances:  acts
such as perjury reflect on the witness' truthfulness, acts such
as communication of threats or the witness' failure to pay debts
do not."  <u>Davidson Pipe Co. v. Laventhol and Horwath</u>, 120 F.R.D.
55, 62 (S.D.N.Y. 1988).  MR's failure to pay his rent for two
months falls on the clear side of this divide and is not open to
cross-examination under the caselaw.  <u>See</u>, <u>e.g.</u>, <u>United States v.
Lanza</u>, 790 F.2d 1015, 1020 (2d Cir. 1986) (evidence of a witness'
failure to pay his debts was not probative on the issue of
truthfulness and had little, if any, relevance to his
credibility); <u>United States v. Robinson</u>, 546 F.2d 309, 313 (9th
Cir. 1976) (district court properly limited cross-examination
about failure to make rental payments on a television set, which
"seemed designed more to obfuscate the issues and confuse the
jury" than to reveal dishonesty).

       B.  <u>$900 check resulting in arrest & dismissal of
charges</u>.  In or about 1999, MR wrote a check for $900 to a third
party.  At the time, MR explained that there were sufficient
funds in his account to cover the check.  Afterward, he withdrew
money from the account, leaving an insufficient balance to cover
the $900 check.  After more than a year, he contacted the bank
and made full restitution for the bounced check.  At the time, MR
was unaware of any charges.  MR was later arrested in February
2001 on an outstanding felony warrant issued by the Olathe Police
Department, Olathe, Kansas, for insufficient funds.  The charges,
in the form of a complaint, were ultimately dismissed.

       Neither Rule 608(b) nor Rule 609 permit cross-
examination on this issue.  Rule 609 provides for impeachment by
evidence of a *conviction*.  Since the charges were properly

<u>United States v. Byrne</u>, 422 F. Supp. 147, 166 (E.D. Pa. 1976) and
explained that "since the writing of checks which bounce can
often occur where no criminal intent is involved," the matter was
"not probative of the witness's truthfulness" under Rule 608(b).
The trial court also noted that there had been neither an
indictment nor a conviction.  <u>Id</u>.  (Although a complaint and
arrest warrant had been issued in the instant matter, there was
no indictment or conviction.)  The Third Circuit affirmed,
finding no abuse of discretion.  <u>United States v. Cahalane</u>, 560
F.2d 601 606 (3d Cir. 1977) (affirming in part, vacating in part,
and remanding).  <u>See also</u> <u>United States v. Estell</u>, 539 F.2d 697,
700 (10th Cir. 1976) (cross-examination for passing worthless
checks excluded).

        This area of law is quite fact specific, and where
there is a stronger indication of fraud, cross-examination may be
appropriate.  For example, writing a series of worthless checks
on a closed account can invite inquiry under Rule 608(b).  <u>United
States v. Lawton</u>, 366 F.3d 550, 552 (7th Cir. 2004).  Here, where
MR wrote checks on an existing account, which had sufficient
funds at the time, and made restitution before learning of any
charges, the Court should exercise its discretion to exclude
cross-examination.

                    C.   <u>Unrelated civil business disputes</u>.

        MR has been involved in various civil business
disputes, some of which have resulted in civil litigation.  In
general, these incidents involved disputed facts, where parties
have differing versions of what transpired in their business
transactions.  The matters are entirely extrinsic to the subject
of MR's testimony.  In one instance, for example, a customer of
MR's alleged that he paid $10,000 for goat meat and received
mutton.  Bills of lading from a storage facility support MR's
position that he sold the customer goat.  In no event, should
this extrinsic, scintillating tale become part of a federal
criminal trial.  In another matter, two sides differ as to
certain product that was to have been provided.  One dispute has
been settled amicably.  In another matter, MR acknowledges that
he is indebted for certain business transactions and plans to
repay the debt.  None of these incidents, which were referred to
in a local newspaper article on April 4, 2004, are proper grist
for cross-examination.

that do not actually indicate a lack of truthfulness." 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 608.22[2][c] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 1997) (footnotes omitted). For this reason, cross-examination about unrelated civil actions that do not bear on credibility is beyond the scope of Rule 608(b). See Lanza, 790 F.2d at 1020 (court limited cross-examination about civil action involving the purchase of a taxi, noting questioning was not sufficiently relevant to credibility).

Questioning about unrelated, civil business disputes should be disallowed for other reasons as well: "[s]ide-excursions into the witness's past, usually unrelated to the substantive issues being tried, create a real danger of confusing the issues and prolonging the trial." Weinstein's Federal Evidence, § 608.02[2]. Such disputed sideshows run afoul of Fed. R. Evid. 403, since the probative value of pursuing the involved details of a civil dispute is outweighed by the danger of distracting and confusing the jury and wasting time. See id. at § 608.22[2][c][iv] (cases applying Rule 403 analysis to Rule 608(b) determination).

Accordingly, inquiry into these areas on cross-examination should not be allowed.

D. Accusations raised by Charles Lee

Charles Lee is a former DEA agent who supervised MR while he cooperated in Pakistan. After Lee retired from the DEA, he and MR became business partners in 2000. Lee has accused MR of various improprieties in the conduct of their business. Lee has given the defense a nine-page letter, describing his allegations. Lee alleged that MR sold a quantity of rice to two buyers. MR denies this and has a different account of what occurred. Lee reported hearsay information from a third party that MR supposedly stole $44,000 from the third party. MR denies this. Lee also wrote that the third party "presumed" MR stole four to six missing green cards. Elsewhere, Lee said the person "saw" MR steal the cards and switch pictures on passports. MR denies this as well. Lee also raised other hearsay allegations that MR denies.

1.   Whether MR may be cross-examined about Lee's claim
that he sold a quantity of rice to two people lies within the
Court's discretion.   At most, defense counsel may ask about the
subject on cross-examination.   The government anticipates that MR
will deny the allegation.   If allowed at all, that should be the
end of the inquiry.

2.   Lee has been subpoenaed to testify by the defense.
In no event can he testify about his business dealings with MR.
Such testimony would squarely violate Rule 608(b)'s bar against
impeachment by extrinsic evidence.   This prohibition is well-
settled;   it "goes back nearly 300 years to the courts of
seventeenth century England."   <u>United States v. McNeill</u>, 887 F.2d
448, 453 (3d Cir. 1989).   As discussed in Judge Weinstein's
treatise on evidence,

> [c]ourts often summarize the operation of the no-
> extrinsic-evidence rule by stating that "the
> examiner must take (or is bound by) the witness's
> answer."   Thus, the cross-examiner may not call
> other witnesses to prove a specific incident of
> misconduct after the witness has denied on cross-
> examination that the incident occurred.

<u>Weinstein's Federal Evidence</u>, § 608.22(1) (citations omitted).
<u>See also</u> <u>United States v. Frost</u>, 914 F.2d 756 (6th Cir. 1990)
(separate witness barred from testifying about government
witness's alleged misuse and theft of funds under Rule 608(b));
<u>United States v. Agnes</u>, 753 F.2d 293 (3d Cir. 1985) (expert
witness barred from testifying about his own business dealings
with government witness on grounds that it was extrinsic evidence
under Rule 608(b)).   In other words, neither Charles Lee nor any
other witness may testify about specific business deals with the
cooperating witness.   Such extrinsic evidence is specifically
precluded by Rule 608(b).

3.   Lee's varying hearsay accounts of a third party's
accusations are not reliable.   The source of that information
agreed to sell five tons of hashish and 600 kilograms of
Pakistani heroin in exchange for cash and four shoulder-fired
Stinger missiles, which were to be sold to the Taliban.   He has
pled guilty in federal court to conspiring to provide material
support to terrorists and conspiring to distribute heroin and

misleading the jury and delaying the trial, contrary to Rule 403.

2.  Narrowing of Count 1

        Count 1 charges defendant with attempting to provide
material support to terrorists.  It details his efforts to sell
shoulder-fired surface-to-air missiles to individuals defendant
believed were terrorists, for use in attacks on American
commercial aircraft.  See Count 1, ¶¶ 2-15, 17-18.  Paragraph 16
alleges that, as part of the scheme, defendant solicited officers
of the Russian Federal Security Service posing as weapons
suppliers to sell him a multi-ton quantity of C-4 explosives.

        According to a transcript of the meeting with Russian
officials, defendant was inquiring about kilogram quantities of
liquid uranium.  When Russian officials tried to confirm whether
defendant was describing plastic explosives, defendant replied,
"uranium."

        Accordingly, the government now provides notice that it
will not rely on paragraph 16 at trial.  The government will
prepare a redacted indictment removing this paragraph.

        Narrowing the proofs at trial presents no notice
problem.  See United States v. Miller, 471 U.S. 130, 134-35
(1984).  Defendant has been aware of the need to defend against
the remaining allegations in Count 1, which the government will
prove at trial.  Therefore, he cannot claim prejudicial surprise
by any narrowing.  The indictment plainly sets out the offense
the government intends to prove; if anything, it charged more
than was necessary.

        The Supreme Court addressed a similar situation in
Miller and found no impermissible amendment when the government
did not offer proof as to one of two theories of a charged mail
fraud scheme.  471 U.S. at 134-38.  The Court explicitly rejected
the proposition that a narrowing of an indictment is
unconstitutional, and reinstated a conviction.  Id. at 144.  As
the Court explained,

                As long as the crime and the elements of the
        offense that sustain the conviction are fully and
        clearly set out in the indictment, the right to a

aiding and abetting charge and not on armed bank robbery charge);
United States v. Smith, 918 F.2d 1032, 1036 (2d Cir. 1990)
("narrowing the scope of an indictment, whether through proof of
a lesser offense offered at trial, or by redaction, does not
offend the notice and review functions served by a grand jury's
issuance of an indictment").  United States v. Castro, 776 F.2d
1118, 1123 (3d Cir. 1985) (narrowing scope of evidence to prove
an offense charged in indictment held valid).

        Miller reaffirmed the true concern raised by amending
an indictment:  "broadening the possible bases for conviction
from that which appeared in the indictment."  471 U.S. at 138;
see also Stirone v. United States, 361 U.S. 212 (1960).  No such
danger is presented here, since the allegations the government
will rely on at trial are all charged in Count 1.

                    *    *    *    *    *

        Thank you for your attention to this matter.  The
government respectfully requests that these matters be addressed
before opening statements.

                              Respectfully submitted,

                              CHRISTOPHER J. CHRISTIE
                              United States Attorney


                              By:   STUART RABNER
                                    BRIAN R. HOWE
                              Assistant U.S. Attorneys

cc:   Henry E. Klingeman, Esq.