U.S. Department of Justice

*United States Attorney*
*District of New Jersey*

_____

*970 Broad Street, Suite 700  PHONE (973)645-2700*
*Newark, NJ 07102-2535  FAX (973) 297-2007*


February 15, 2005


The Honorable Katharine S. Hayden
United States District Court
   for the District of New Jersey
U.S. Post Office and Courthouse
Federal Square
Newark, N.J.  07102

      Re:    United States v. Hemant Lakhani
            Crim. No. 03-Cr-880

Dear Judge Hayden:

      Please accept this letter brief setting forth the legal basis for the Government's request to charge on the entrapment defense.  As discussed further below, the Government objects to Defendant's proposed language concerning predisposition insofar as it fails to follow law of the Third Circuit and misapplies the law of another circuit.

      The Court of Appeals for the Third Circuit has established and consistently used the following five factors for determining a defendant's predisposition to commit a crime:

      (1) the character and reputation of the defendant, including any prior criminal record;

      (2) whether the suggestion of criminal activity was initially made by the government;

      (3) whether the defendant engaged in the criminal activity for profit;

      (4) whether the defendant evidenced reluctance to commit the offense, overcome only by repeated government inducement or persuasion;

and

(5) the nature of the inducement or persuasion supplied by the government.

United States v. Fedroff, 874 F.2d 178, 183 (3d Cir. 1989); United States v. Wright, 921 F.2d 42, 45 (3d Cir. 1990); see also United States v. Jannotti, 673 F.2d 578, 604 (3d Cir. 1982) (*en banc*).[1]  These "Fedroff factors" have been employed verbatim by district courts within our Circuit.  See United States v. Giampa, 904 F. Supp. 235, 311 (D. N.J. 1995); United States v. Lightfoot, 1992 WL 212403,*5 (E.D. Pa. 1992); United States v. Kim, 1991 WL 4678, *4 (E.D. Pa. 1991).  The Government respectfully requests that this Court use the Fedroff factors in its entrapment instruction.[2]

---

[1] The "Fedroff factors" were based on United States v. Sorrells, 287 U.S. 435 (1932), and United States v. Sherman, 356 U.S. 369 (1958), and further developed by the Ninth Circuit in United States v. Reynosa-Ulloa, 548 F.2d 1329, 1336 (9th Cir. 1977).  The Ninth Circuit has likewise repeatedly employed these five factors.  See United States v. White, 5 F.3d 544, 1993 WL 343125, *1 (9th Cir. 1993); United States v. Smith, 924 F.2d 889, 898 (9th Cir. 1991); United States v. Bonanno, 852 F.2d 434, 438 (9th Cir. 1988); United States v. Smith, 802 F.2d 1119, 1124-25 (9th Cir.1986); United States v. So, 755 F.2d 1350, 1354 (9th Cir. 1985).  The five-factors have also been cited with approval by the Fourth, Sixth, and Seventh Circuits.  See United States v. Elliott, 896 F.2d 1368, 1990 WL 15567, *2 (4th Cir. 1990); United States v. Graham, 915 F.2d 1573, 1990 WL 155290, *4 (6th Cir. 1990); United States v. McLernon, 746 F.2d 1098, 1111 (6th Cir. 1984); United States v. Perez-Leon, 757 F.2d 866, 871 (7th Cir. 1985); United States v. Thoma, 726 F.2d 1191, 1197 (7th Cir. 1984); United States v. Kaminski, 703 F.2d 1004, 1008 (7th Cir. 1983); see also United States v. Gordon, 744 F. Supp. 149, 152 (E.D. Mich. 1990), aff'd 940 F.2d 663 (6th Cir. 1991).

[2] Entrapment charges substantially similar to the charge proposed by the Government here have been given by the Honorable William G. Bassler in United States v. Nidia Davila-Colon (Crim. No. 02-810) (June 28, 2003), and the Honorable Joseph A. Greenaway, Jr. in United States v. Charles Rodriguez (Crim. No. 98-547) (June 1999), conviction and sentenced aff'd, 54 Fed. Appx. 739, 2002 WL 31732265 (3d Cir. Dec. 6, 2002) (unpublished), cert. denied, 538 U.S. 938 (2003).

Despite the readily apparent law of this Circuit, Defendant has proposed an entrapment charge which includes several deviations from controlling legal authority. Defendant's proposed charge is loosely-based on the Pattern Criminal Federal Jury Instructions for the Seventh Circuit ("Pattern Charge"). The Pattern Charge contains not five, but seven factors which deviate, in part, from the Third Circuit's Fedroff factors. Moreover, Defendant's proposed charge deviates *even further* from the Pattern Charge, resulting in a proposed charge which resembles the law of no circuit.

The following inconsistencies exist between Third Circuit law and the Pattern Charge, as well as between the Pattern Charge and Defendant's proposal:

1.    Background of Defendant

The first Fedroff factor states:

*The character and reputation of the defendant, including any prior criminal record.*

The first factor in the Seventh Circuit Pattern Charge, by comparison, states:

*The background or character or reputation of the defendant including prior criminal history or economic status.*

Thus, the first Pattern factor deviates from the Third Circuit in one key respect – the consideration of "economic status." Neither Fedroff, nor any other Third Circuit decision has ever adopted "economic status" as a proper consideration. Notably, there is no Seventh Circuit case law adopting such an "economic status" consideration. Indeed, the two cases cited in the Pattern Charge, United States v. Townsend, 555 F.2d 152 (7th Cir. 1977), and United States v. Lakich, 23 F.3d 1203 (7th Cir. 1994), are silent regarding a defendant's economic status or poverty. Rather, they merely discuss a defendant's personal background, noting that the jury is entitled to consider any criminal history to determine where a defendant "sits on the continuum between naive first offender and streetwise criminal." Townsend, 555 F.2d at 155 n.3; Lakich, 23 F.3d at 1209.

Furthermore, it appears that there is no case law from any circuit adopting a so-called "economic status" factor. However, some circuits have discussed a defendant's extreme poverty. For example, the Eighth and Ninth Circuits have held that a defendant cannot claim entrapment simply because he was poor and could not resist the substantial

sums of money to be made by engaging in the criminal activity.  However, these Circuits have noted that, in some cases, a defendant's "*unusual poverty*" may be considered.  See, e.g., United States v. Stenberg, 803 F.2d 422, 432 (9th Cir. 1986) (refusing to consider defendant's complaint that he was in "dire financial straits" and "needed money badly" when undercover agent offered him "large sums of money"), superseded by statute on other grounds as stated in United States v. Atkinson, 966 F.2d 1270 (9th Cir. 1992); United States v. Dion, 762 F.2d 674, 689 (8th Cir. 1985) (defendant's "severe poverty" should be considered where government agents offered substantial sums to defendant living on "extremely impoverished Indian Reservation ... where ... life is for many Indians, a mere question of simple survival."), judgment reversed in part on other grounds, 476 U.S. 734 (1986); see also United States v. Lambinus, 747 F.2d 592, 598 (10th Cir. 1984) (defendant's poor financial condition and difficulty in finding job may not, in vast majority of cases, be relevant to question of whether he was entrapped).  It is doubtful that Lakhani could show such extreme deprivation, rendering the economic status consideration relevant or helpful to the jury's analysis of predisposition.  Because the Fedroff factors do not include an economic status consideration and because such a consideration is not relevant in this case where Defendant cannot show extreme deprivation, language regarding Defendant's economic status should not be included in the jury charge.

Defendant's proposed charge further deviates from both the first Fedroff factor and the Pattern Charge by encouraging the jury to consider "his lack of a prior criminal history," rather than "any" criminal history.  The Government submits that the Court should adopt Fedroff's consideration of "any prior criminal record" in order to be fully consistent with controlling legal authority and to avoid any attempt by the Defendant to interject closing argument into an otherwise neutral jury instruction.

2.    Whether Defendant Performed The Criminal Activity For Profit

The third Fedroff factor states:

*Whether the defendant engaged in the criminal activity for profit.*

The third factor in the Seventh Circuit Pattern Charge, by comparison, states:

*Whether the defendant performed criminal activity for profit.*

4

The operative word in the Third Circuit's Fedroff charge is "the." The Third Circuit's charge more clearly explains the import of this factor. The jury is encouraged to consider whether Defendant engaged in *the instant offense* for profit, and not to consider whether Defendant has engaged in any prior, different, or unrelated criminal activity for profit. See, e.g., United States v. Sherman, 356 U.S. 369, 375-376 (1958) (accused not predisposed because, *inter alia*, he did not appear to make a profit on the drug sales with which he was charged); United States v. Reyes, 239 F.3d 722, 739 (5th Cir. 2001) (considering "desire for profit," and noting that defendant city councilman charged with bribery was predisposed because, *inter alia*, he sought to profit from payments received in exchange for using his influence to secure city building contracts in instant offense). Thus, the jury should be instructed to consider whether the Defendant engaged in the criminal activity for profit.

Defendant's proposal goes even one step further, adding a clause to the Seventh Circuit's Pattern Charge which appears nowhere in that Pattern Charge, nor in the Third Circuit case law. Defendant's proposal states:

> *Whether Mr. Lakhani performed criminal activity for profit before his first contact with the Government informant in this investigation.*

Such an instruction would further mislead the jury which should consider any profit-seeking by defendant in *this* crime, not in any prior crimes.

3.      Whether Defendant Was Reluctant To Commit The Offense

The fourth Fedroff factor more succinctly states what the Seventh Circuit Pattern Charge sets forth in factors four and five:

The fourth Fedroff factor states:

> *Whether the defendant evidenced reluctance to commit the offense, overcome only by repeated government inducement or persuasion.*

The fourth and fifth Pattern Charge factors state:

> *(4) Whether the defendant showed reluctance to perform criminal activity; [and] (5) Whether law enforcement officers or their agents repeatedly induced or persuaded the defendant to perform criminal*

5

*activity.*

The Fedroff factor should be charged here, not only because it is the law of this Circuit, but also because it is more concise.  Defendant's proposal again goes one step beyond and provides a false recitation of the Seventh Circuit's Pattern Charge. Defendant proposes instead:

> *(4) whether Mr. Lakhani showed <u>any</u> reluctance to perform criminal activity; [and] (5) whether the Government informant repeatedly induced or persuaded Mr. Lakhani to perform criminal activity.*

The use of the word "any" modifying "reluctance" in the Defendant's proposal inappropriately interjects argument into the charge and misstates the law.[3]  A demonstration of merely "any" reluctance does not show a lack of predisposition.

4.    Neither The *Fedroff* Factors, Nor Third Circuit Case Law Contain The Seventh Circuit's Sixth and Seventh Factors

The Third Circuit's fifth Fedroff factor encourages the jury to consider:

> *(5) the nature of the inducement or persuasion supplied by the government.*

By contrast, the sixth and seventh factors of the Seventh Circuit's Pattern Charge, as paraphrased in Defendant's proposal state:

> *(6) whether the Government informant offered an ordinary opportunity to commit the offenses; and (7) whether the Government informant*

---

[3] The Government also objects to the language on page 3 of Defendant's proposal: "In their zeal to enforce the law, however, Government agents...."  This language is unnecessary.  Moreover, the word "zeal" carries a negative connotation, and hence, the phrase may inflame the passions of the jury.  The Government is not aware of any case in which this language has been included in a jury instruction.

*offered exceptional profits or persuasion or merely solicited
commission of the offenses.*

These factors do not appear anywhere in the law of the Third Circuit.  For this reason alone, the Government submits that this Court should follow the clear law of this Circuit, and not employ the sixth and seventh factors of the Seventh Circuit's Pattern Charge.

5.    Defendant's Novel "Positional Force" Requirement

The portion of the charge proposed by Defendant which is most unfaithful to the law of the Seventh Circuit, not to mention clearly unsupported by the law of the Third Circuit, is Defendant's attempt to create a brand new element that the Government must demonstrate to show predisposition – "positional force" (also known as "positional predisposition").  The Government strenuously objects to this proposal.

Defendant's proposed charge states:

*In addition to being ready and willing, Mr. Lakhani must have had the
ability by reason of previous training, experience, occupation, or
acquaintance to commit the offenses even if the Government had not
provided the opportunity to do so.  If Mr. Lakhani was not in a position
to commit the offenses without the Government's help, then he was not
predisposed.*

Although this request is based on an "optional addition" to the Seventh Circuit Pattern Charge, it would be clear error to include this language for several reasons.  First, the "optional addition" mischaracterizes United States v. Hollingsworth, 27 F.3d 1196 (7th Cir. 1994) (*en banc*) – the decision upon which it is purportedly based.   Second, to the extent the language actually reflects the 6 to 5 majority opinion from the sharply-divided Hollingsworth Court, that opinion has been rejected by several other circuits, and has never been accepted by our own circuit.  The language should be rejected for yet a third reason.  In the factual context of this case, and given the nature of the attempt offenses charged in the Indictment, the language would not even be appropriately applied in the Seventh Circuit.

A.    The "Positional Force" Instruction Mischaracterizes *Hollingsworth*

The so-called new "positional force" element mischaracterizes Hollingsworth.

7

Indeed, as the *en banc* <u>Hollingsworth</u> Court held, "We do not suggest that [<u>United States v. Jacobson</u>, 503 U.S. 540 (1992),] adds a new element to the entrapment defense...." <u>Hollingsworth</u>, 27 F.3d at 1199.

In <u>Hollingsworth</u>, the defendants, an Arkansas farmer and dentist, aspired to become "international financiers" although they lacked the "training, contacts, aptitude or experience." <u>Id.</u> at 1200. They started a corporation, advertised for customers, and obtained two foreign banking licenses. <u>Id.</u> The enterprise generated no customers and steadily lost money. <u>Id.</u> To raise money, defendants decided to sell one of their two foreign banking licenses. <u>Id.</u> An undercover Customs agent saw an advertisement for the sale of the license and, suspecting that the sellers might be involved in money laundering, called to inquire. <u>Id.</u> The undercover posed as an individual who wanted to deposit a lot of cash overseas. <u>Id.</u> at 1200-1201. Over time, one of the defendants discussed various financial services and options with the agent. <u>Id.</u> at 1201.

Finally, after several discussions, a defendant met with the undercover face-to-face. <u>Id.</u> The undercover informed him that the source of the cash was from "the smuggling of guns to South Africa." <u>Id.</u> Defendants then arranged several wire-transfers of hundreds of thousands of dollars and were convicted of money laundering. <u>Id.</u>

On appeal, a panel of the Seventh Circuit reversed the convictions, holding that defendants had been entrapped as a matter of law. The panel's opinion appeared to create a new element of the defense of entrapment – "readiness." As a result, upon rehearing *en banc*, Judge Posner, writing on behalf of the majority of a closely-divided bench of Seventh Circuit judges, clarified the panel's ruling by expressly stating that the Court did not add a new element to the defense of entrapment. <u>Id.</u> at 1199 ("We do not suggest that <u>Jacobson</u> adds a new element to the entrapment defense – 'readiness,' or 'ability' or 'dangerousness' on top of inducement and, most important, predisposition."). <u>Hollingsworth</u>, 27 F.3d at 1199.

Judge Posner explained that predisposition involves more than a defendant's mental state, it also has, as he christened it, "positional as well as dispositional force":

> The defendant must be so situated by reason of previous training or experience or occupation or acquaintances that it is likely that if the government had not induced him to commit the crime some criminal would have done so; only then does a sting or other arranged crime take a dangerous person out of circulation. A public official is

in a position to take bribes; *a gun dealer to engage in illegal gun sales.* For these and other traditional targets of stings all that must be shown to establish predisposition and thus defeat the defense of entrapment is willingness to violate the law without extraordinary inducements; *ability can be presumed.* It is different when a defendant is not in a position without the government's help to become involved in illegal activity.

Id. at 1200 (emphasis added).

As Judge Posner noted in reversing defendants' convictions, prior to these wire transfers, defendants had never engaged in financial dealings, nor had they ever engaged in wrongdoing. Id. at 1201. But for the undercover agent's interest in defendants' business, they never would have committed money-laundering or any related offense. Id. at 1202. Indeed, their business would have shut down, having solicited no real customers. The government's investigation "turned two harmless though weak, foolish, and ... greedy [ ] men into felons." Id.

Significantly, in response to defendants' entrapment defense, the Government produced no evidence that defendants had ever contemplated engaging in money laundering prior to the government's solicitation. Id. at 1203. As Judge Posner stated:

"[Defendants] hadn't the background, resources, or connections. When the opportunity to become *crooked* international financiers beckoned, they were willing enough.... [Defendants] had no prayer of becoming money launderers without the government's aid....

... [Defendants] didn't have a bank or a public office or any other facility that made it even remotely likely that they would have engaged in criminal activity if the government had not set their minds to it.

The point is not that [Defendants] were *incapable* of engaging in the act of money laundering. Obviously they were capable of the act. All that was involved in the act was wiring money to a bank account designated by the government agent. Anyone can wire money. But to get into the international money-laundering business you need underworld contacts, financial acumen or assets, access to foreign

banks or bankers, or other assets. [Defendants] had none....

Id. at 1202 (emphasis in original).

Judge Posner's opinion discusses two types of entrapment, only one of which would trigger the optional "positional force" consideration. First, there are cases, like Hollingsworth, in which a defendant is willing to commit a crime, but if "left to his own devices, in all likelihood he would have never run afoul of the law." Id. at 1199 (citing Jacobson, 503 U.S. at 553-554).[4] Judge Posner also provided the example of a counterfeiter:

> Suppose the government went to someone and asked him whether he would like to make money as a counterfeiter, and the reply was "Sure, but I don't know anything about counterfeiting." Suppose the government then brought him a printer, paper, and ink, showed him how to make the counterfeit money, hired a staff for him, and got everything set up so that all he had to do was press a button to print the money; and then offered him $10,000 for some quantity of counterfeit bills.

---

[4] Jacobson provides another example of such an entrapment scenario. The Government prosecuted Jacobson for buying child pornography from undercover government agents after a 26-month investigation. Jacobson, 503 U.S. at 542. Jacobson, a farmer in Nebraska, had limited access to child pornography. Indeed, as far as the government was aware, during its investigation, Jacobson had not received any other solicitations to buy pornography. Id. at 547. The government did more than provide an ordinary opportunity to buy child pornography. Undercover agents sent Jacobson solicitations which reflected psychologically manipulative responses to Jacobson's own noncriminal responses. Id. at 544-546. The government's solicitations sometimes depicted their senders as "free speech" lobbying organizations and fighters for the "right to read what we desire"; they asked Jacobson to "fight against censorship and the infringement of individual rights." Id. at 545, 552. Therefore, although Jacobson was willing to commit the crime, indeed he never even resisted purchasing the child porn, the 5-4 Supreme Court ruled that the Government needed to prove something more.

Hollingsworth, 27 F.3d at 1199.  Judge Posner's hypothetical counterfeiter demonstrates that an individual, although perfectly willing to commit crime, might have a good entrapment defense.  In such a "rare" situation, the optional "positional force" instruction would be appropriate.  Id. at 1200.

However, the second type of entrapment scenario in which the "positional force" consideration would be irrelevant and inappropriate would involve a defendant who had the idea for the crime, but who lacked the present means to commit it.  In that scenario, because of the defendant's training, experience, occupation or acquaintances, had the government not supplied the means, some other person very well might have.  Id.  Judge Posner's aforementioned hypothetical public official or gun dealer provide examples of this second type of entrapment scenario in which a "positional force" instruction would not be appropriate.  Id.  Judge Posner provided yet a third example:

> [assume that defendant] had decided to smuggle arms to Cuba but didn't know where to buy a suitable boat.  On a hunch, a government agent sidles up to [defendant] and gives him the address of a boat dealer, and [defendant] is arrested after taking possession of the boat and setting sail, and is charged with attempted smuggling.  That would be a case in which the defendant had the idea for the crime all worked out and lacked merely the present means to commit it, and if the government had not supplied them someone else very well might have.

Id. at 1203.  Thus, in a case involving the public official, the gun dealer, or the arms smuggler, all that the Government is required to prove regarding predisposition is "willingness to violate the law without extraordinary inducements; ability can be presumed."  Id. at 1200.  In such a case, the positional force instruction is inappropriate.  As Hollingsworth explained: "We do not wish to be understood as holding that lack of *present* means to commit a crime is alone enough to establish entrapment if the government supplies the means."  Id. at 1202 (emphasis in original).

      B.     The "Positional Force" Theory Has Been Rejected By Several Courts of Appeals

Several circuits have rejected the "positional force" instruction.  For example, the Ninth Circuit has explicitly rejected a "positional force" requirement and held that Jacobson does not require what it termed "positional predisposition."  United States v. Thickston, 110 F.3d 1394 (9th Cir. 1997).  There, defendant argued that Hollingsworth

required the government to show not only that defendant intended to break the law, but that he must have been "ready" to do so prior to government contact. Id. at 1398. In rejecting this reasoning, the Ninth Circuit held: "[a] person's ability to commit a crime may illustrate her predisposition to do so, but should not become a separate element." Id.

In United States v. Wise, 221 F.3d 140 (5th Cir. 2000), the Fifth Circuit rejected the "positional force" requirement as inapplicable to the set of facts before it, without opining on whether the Circuit would ever adopt such a consideration. Id. 155-156. There, defendants, members of an organization seeking to overthrow the federal government, approached a computer consultant and asked if he would assist them in sending anonymous e-mails to various federal agencies, threatening to use weapons of mass destruction against them. Id. at 145-146. The computer consultant went to federal authorities who set up a sting operation. Id. Defendants had the idea for the crime, but needed the computer consultant-turned government informant to provide the means to commit it, _i.e._ defendants needed access to e-mail and the ability to send untraceable e-mails via the internet. "If [the government informant] had not assisted [defendants] with regard thereto, someone else very well might have, as [defendants] most likely would have looked elsewhere for assistance." Id. at 156. As a result, defendants were not entitled to a jury charge on positional force; defendants were predisposed and not entrapped. Id. at 155-156. See also United States v. Reyes, 239 F.3d 722, 742-743 (5th Cir. 2001) (rejecting defendant's claim that district court should have instructed jury on Hollingsworth positional force; instruction unnecessary because defendant city councilman "in the position to take bribes," and defendant lobbyist charged with making bribes had necessary training, experience, and contacts to do so); United States v. Brace, 145 F.3d 247, 256-257, 260 (5th Cir. 1998) (rejecting as waived defendant's claim, for first time on appeal, of entitlement to Hollingsworth positional force charge and noting that: (1) law of the circuit is "at least arguably contra to the holding in Hollingsworth;" and (2) "ready and willing" is not synonymous with "ready, willing, _and able_.") (emphasis in original).[5]

---

[5] The Second Circuit also rejected a similar consideration, albeit before either Hollingsworth or Jacobson were decided. See United States v. Ulloa, 882 F.2d 41, 44 (2d Cir. 1989) (rejecting defendant's claim that entrapment instruction involving defendant being "ready and willing" to commit crime connotes defendant having the present physical ability to commit the crime; rather, "readiness" connotes an openness or amenability to commit the crime).

Similarly, the Fourth Circuit rejected the insertion of a "positional force" instruction in an entrapment jury charge "because even under the Hollingsworth, formulation, [defendant] clearly was in the position to commit the crimes with which she was charged." United States v. Squillacote, 221 F.3d 542, 567 (4th Cir. 2000). Defendant was convicted of espionage after giving classified documents to an undercover government agent. Defendant requested that the jury be instructed that in order to prove predisposition, the government must prove that defendant was "in a position by virtue of ... her acquaintances, experience, occupation, or training to commit the offenses without the government's help or involvement." Id. at 566. In rejecting this instruction, the Fourth Circuit noted that defendant had a job providing her with access to classified information and excellent training in the art of espionage, thus, putting her in the position to become an active spy even without the help of an undercover agent. Id. at 567.

The analysis of the Fourth, Fifth, and Ninth Circuits, in rejecting Hollingsworth is persuasive. Consequently, the Government suggests that the Hollingsworth majority and perhaps the Seventh Circuit's Pattern Charge interpreting Hollingsworth have misconstrued the meaning of predisposition.[6]

   C.   A "Positional Force" Instruction Is Inappropriate In The Context Of This Case

---

[6] The five Hollingsworth dissenters not only stuck by the Seventh Circuit's established five criteria for determining predisposition (which are substantially similar to the Fedroff factors), but they strongly rejected Judge Posner's "positional force" theory. Hollingsworth, 27 F.3d at 1206 (Coffey, J. dissenting). The dissenters criticized any requirement that the government prove that defendant was in a position to commit the crime as a novel element of entrapment created by the majority. Id. at 1205-1206 & n.3; see id. at 1212 (Easterbrook, J. dissenting). Further, calling the majority's characterization of defendants' innocence "fictional," (*e.g.*, upon arrest, defendants were found carrying fake passports), the dissenters noted that the factual record failed to support the majority's contention. Id. at 1206 (Coffey, J. dissenting). In sum, the dissenters feared that the majority's ruling "will benefit not only the pathetic incompetents of the criminal word but also the very competent criminal who is sufficiently studied in his way of doing business so as to appear not *too* organized." Id. at 1217 (emphasis in original) (Ripple, J., dissenting).

13

Even assuming, *arguendo*, that the Third Circuit were to accept Judge Posner's "positional force" theory, over the strong dissent of five of eleven Seventh Circuit judges, and several other Courts of Appeals, Judge Posner's theory is not applicable here and would be confusing to the jury. The Seventh Circuit Pattern Charge makes clear that the "positional force" language is purely optional and should be used only under a certain set of facts. Those facts are not present here.

Here, Lakhani is more like the gun dealer or public official, rather than the counterfeiter in the Hollingsworth hypothetical. By his own admission, Lakhani has been involved in the world of arms dealing since the late 1990s. See Ex. 129T, at 46, 57, 68-9. Starting then, he developed a network of acquaintances and high-level contacts in arms trafficking, including numerous officials at Ukrspetsexport, the State Company for Export and Import of Military and Special Products and Services authorized by the Ukranian Government, and Omnipol, an arms manufacturer located in the Czech Republic. Lakhani's passports corroborate his admissions; they reveal extensive travel to the Ukraine and Russia before and after Lakhani contacted the government's informant in this case. See Ex. 76. His personal papers, seized by British authorities, included over twenty business cards of Ukrspetsexport and Omnipol officials. See Ex. 300, 301, 304.

Contrary to Lakhani's assertions at trial, he has experience as an arms dealer. He brokered the sale of eleven armored personnel carriers (BTR-80s) from Ukrespetsexport to the government of Angola. Defendant referred to this deal at various times in conversations with the informant. See, e.g., Ex. 102, at 9; Ex. 129, at 41-2; Ex. 254T, at 35.[7] He also spoke freely about his efforts to sell Weapon Locating Radar, MIG 29 aircraft, ammunition and other items, as well as a deal to build a plant for producing bullets. See Ex. 102, at 62-63; Ex. 109, at 9, 10, 32; Ex. 129T, 47-8. Lakhani admittedly has experience and acquaintances in trafficking arms.

The inclusion of Judge Posner's "positional force" language or the Seventh Circuit's optional language in Lakhani's jury charge would be very confusing to the jury for a second reason. The Pattern Charge language avoids the "positional" or "situational" language Judge Posner used, and substitutes the simple word "ability" for a far more complex idea. The practical danger of using this instruction is that, hearing the word "ability," a jury may naturally interpret it to mean: "could Lakhani have done it," rather

---

[7] The Government anticipates there will be additional evidence of this arms transaction later in the trial.

than "was he properly situated or positioned?"  The former question misstates entrapment law in this Circuit, as well as under Hollingsworth.

Defendant's proposed instruction not only inappropriately inserts the word "ability" into the predisposition calculus, but it then conflates the term "ability" with "success" which is immaterial in the context of an attempt crime.  Judge Posner's "positional force" theory only seems to make sense, if at all, in the context of a completed crime.  To "attempt" means to knowingly take a substantial step toward committing the offense with the intent to commit that offense.  Success is not an element of attempt.  Thus, in proving an attempt crime, the Government need not prove that Defendant's attempt succeeded.  The success or failure of the criminal plan is immaterial.

Here, because Lakhani is charged with attempt crimes, his "ability" to complete the crimes is irrelevant.  The instruction regarding "ability" would make no sense in this context because it would effectively charge the jury to consider whether Lakhani had the ability to attempt to provide missiles.  Indeed, as described above, Lakhani had the ability to arrange the deal – the evidence shows that Lakhani is a deal maker, who is predisposed to make arms deals through his occupation, experience, and contacts.  Lakhani only temporarily lacked the missiles.  Had the Russian government not provided them, another seller would have materialized.

Finally, the unnecessary inclusion of a "positional force" element or the "ability" language in the jury charge could result in manifest injustice.  See United States v. Wexler, 31 F.3d 117, 128-129 (3d Cir. 1994) (granting writ of mandamus and reversing and remanding jury instruction which was clearly erroneous under established law, where district court's adoption of instruction would have "entail[ed] a high probability of failure of a prosecution – a failure the government could not then seek to remedy by appeal or otherwise...."); Compare United States v. Russell, 411 U.S. 423, 435 (1973) (expressly disapproving lower federal court decisions expanding entrapment defense and reiterating that entrapment is a "relatively limited defense," and not one of constitutional dimension).

For the aforementioned reasons, the Government requests that this Court accept its request to charge on entrapment, or modify Defendant's proposal as outlined above.  The Government also requests that it be permitted to articulate its position further at oral argument.

Very truly yours,

15

CHRISTOPHER J. CHRISTIE
United States Attorney


By:


Sabrina G. Comizzoli
Assistant U. S. Attorney

Stuart Rabner
Assistant U. S. Attorney

Brian R. Howe
Assistant U. S. Attorney


cc:   Henry E. Klingeman, Esq.

16