# KLINGEMAN TURANO LLC
―――――――――――――ATTORNEYS AT LAW――――――――――――

HENRY E. KLINGEMAN*†
STEPHEN TURANO°
Of Counsel
KARIN S. RIECKER°
NANCY M. KLINGEMAN

*Admitted, NJ, PA & HI
†Certified by the Supreme Court of
 New Jersey as a Criminal Trial Attorney
°Admitted, NJ & NY

230 MAIN STREET
SECOND FLOOR
MADISON, NEW JERSEY 07940
TEL: (973) 236-0010
FAX: (973) 236-0012
www.ktlawyers.com

**Document Electronically Filed**

February 18, 2005

Writer's Direct Line:
(973) 236-0114

Writer's E-Mail Address:
hek@ktlawyers.com

Honorable Katharine S. Hayden
United States District Court
United States Post Office and Courthouse
Federal Square
Newark, NJ 07101

    Re:    <u>United States v. Hemant Lakhani</u>
            Crim. No. 03-880 (KSH)

Dear Judge Hayden:

    Please accept this letter in lieu of a more formal brief in support of defendant Hemant Lakhani's proposed jury instruction on entrapment. Our proposed instruction is consistent with both the law of the Third Circuit and the facts of the case; at the same time, it incorporates legal principles recognized in other jurisdictions.

    The parties recognize that a defendant is entitled to a "theory of the defense" jury instruction, provided the instruction finds support in the law and the record. Thus, the Government has not objected to the giving of an entrapment instruction, even while the Government objects to defendant Lakhani's proposed instruction. Consequently, the Court should employ language that best reflects the proofs while remaining consistent with the case law, both in this Circuit and (to the extent our Circuit is silent) the law elsewhere.

    The instruction drafted by the defense attempts to harmonize the Government's proposed instruction with several factual realities and legal principles, primarily reflected in Seventh Circuit case law. Indeed, a comparison of the Government's proposed instruction with the defendant's proposed instruction reveals that the defendant's proposed instruction incorporates either verbatim or in paraphrase each and every aspect of the Government's proposed instruction. The Government cannot complain (and it does not appear to) that the defense instruction fails to include elements requested by the Government. Instead, the Government objects to certain additions requested by the defense.

Honorable Katharine S. Hayden
United States District Court
February 18, 2005
Page 2

      The Government's objections are misplaced, given that they reflect neither the case law of this Circuit, nor other Circuits cited, nor the factual record developed at trial.

1.     <u>The Third Circuit Has Never Limited Entrapment Instructions to Five "Fedroff Factors"</u>

      The Government correctly cites five factors repeatedly identified in Third Circuit case law as relevant to the issue of predisposition. (Given the concededly strong evidence of inducement, the Government must necessarily focus its analysis on predisposition.) While the Government identifies the five factors quoted on pages 1-2 of its February 15, 2005 letter and proposed instruction, nowhere in any Third Circuit case cited by the Government does our appeals court purport to limit the factors to be considered to the five factors stated. Given the case-specific nature of the predisposition inquiry, one naturally would not expect the Court of Appeals to set forth a mechanical test. Ironically, when the Government, in its first footnote, cites cases that have approved the five factors, it cites no fewer then three cases from the Seventh Circuit. As set forth below, the Seventh Circuit itself has not seen fit to limit the factors to the five listed by the Government. Additionally, at footnote 2 of its letter, the Government indicates that its entrapment charge has been utilized in "substantially similar" form by other judges in this District. There is no indication, however, that defense requests consistent with Lakhani's request to tailor the entrapment charge to the case were requested or rejected in those cases.

2.     <u>Instruction Containing "Lack" of a Prior Criminal History Consistent with this Case</u>

      The Government objects to the defendant's proposal that the Court instruct the jury to consider the defendant's "<u>lack</u> of a prior criminal history," rather then have the jury consider whether the defendant has "any" criminal history. The Government has acknowledged in discovery that Lakhani has no criminal record or criminal history. Consequently, the defendant's proposal is consistent with reality and thus not argumentative.

3.     <u>Instruction on Criminal Activity for Profit Must Focus on Prior Criminal History</u>

      The Government objects to the defendant's formulation that the jury should consider "whether the defendant engaged in criminal activity for profit," rather than "whether the defendant engaged in <u>the</u> criminal activity for profit." The Government apparently believes that the use of the word "the" is designed to require the jury to limit its consideration to the criminal activity that forms the basis of the charges. In other words, the Government would only have the jury consider whether Lakhani engaged in the so-called "missile scheme" for profit. This is nonsensical. Predisposition, by its nature, necessarily focuses on criminal activity conducted by the defendant, if any, <u>prior</u>

Honorable Katharine S. Hayden
United States District Court
February 18, 2005
Page 3

to the criminal activity that forms the basis of the charges. What the factor is designed to focus the jury upon is the particular type of criminal activity, i.e., whether the defendant engaged in the type of criminal activity for profit prior to the alleged criminal activity forming the basis of the charges. This becomes evident when one considers the relevance of the "for profit" aspect of the factor.

For example, if a person is charged with drug distribution based on his selling marijuana in personal use quantities to an undercover agent for money, it would be relevant to consider whether he has distributed marijuana to others for sale in the past or whether he has merely given marijuana to his friends in the course of recreational use. In the latter case, the defendant's failure to engage in the criminal activity (the distribution of marijuana in social settings) for profit would militate against predisposition. In the former case, the defendant's engagement in the criminal activity (the distribution of marijuana for sale) includes a profit element that undermines any claim by the defendant that he lacks predisposition. Thus, in Lakhani's case, it is relevant to consider whether Lakhani has engaged in illegal arms trafficking for profit prior to being contacted by the Government informant. If he has, then the jury would likely consider him to have been predisposed and not entrapped. If he has not (as he has not), then the jury is entitled to consider the absence of a record in this area as evidence of his lack of predisposition.

To support its point, the Government cites, inter alia, United States v. Giampa, 904 F.Supp. 235 (D. N.J. 1995). The Giampa court stated, however, that "Gaito's involvement with drugs was profit driven. Moreover . . . there were other references to Gaito's involvement in narcotics which were inconsistent with a showing of nonpredisposition." Id. at 315. These references clearly point to prior criminal activity for profit and not to the alleged criminal activity that is the subject of the case.

4.   Jury Must Focus on Time Before Defendant's First Contact with Informant

The Government objects to the defendant's attempt to focus the jury on the existence of predisposition before the defendant's first contact with the Government's informant in this investigation. Given that no less an authority then the United States Supreme Court in Jacobson expressly held that the focus on predisposition must be in the period before the defendant's first contact with the Government, the Government's objection is at odds with prevailing authority. Jacobson v. United States, 503 U.S. 540, 553, 112 S.Ct. 1535, 1543 (1992). Naturally, given the total absence of evidence of predisposition before Lakhani's first contact with the Government's informant, the Government does not wish to emphasize this relevant consideration. Nonetheless, the law mandates that it be considered and the jury should be instructed to consider it.

Honorable Katharine S. Hayden
United States District Court
February 18, 2005
Page 4

5.    "Any" Reluctance Language is Supported by Caselaw

  The Government objects to the defendant's inclusion of the word "any" in connection with the factor requiring the jury to consider whatever reluctance Lakhani may have exhibited before or while performing alleged criminal activity. The defendant's request reflects, realistically, the rather mild reluctance reflected on several occasions during the conversations between Mr. Lakhani and the informant. While the Government asserts that the inclusion of the word "any" "misstates the law" the Government itself fails to cite any law that precludes the use of the word "any."

  Interestingly, while the Government readily accepts the Ninth Circuit's rejection of Hollingsworth (discussed below), it does not disclose that the language "any reluctance" comes from that circuit. See United States v. Becerra, 992 F.2d 960, 963 (9th Cir. 1993) ("In evaluating predisposition, we examine five factors . . . (4) whether the defendant showed any reluctance." (emphasis added)). See also United States v. Gurallo, 333 F.3d 944, 955 (9th Cir. 2003); United States v. Davis, 36 F.3d 1424, 1431 (9th Cir. 1994). Therefore, it is difficult to understand how defendant "misstates the law" with regard to the use of the word "any."

6.    Inclusion of Language Pertaining to Government's "Zeal" Will Not Inflame Jury

  At footnote 3, the Government objects to language included in the defendant's proposal that is quoted directly from Jacobson v. United States, 503 U.S. 540, 548, 112 S.Ct. 1535, 1540 (1992). Nevertheless, the defendant would consent to removing this language if the following language is also removed: "The Government may use undercover operations and trickery to detect and arrest people engaged in criminal activities and a Government agent or informant may property pretend to be a criminal and offer to take part in a crime, so long as the Government is merely providing the opportunity for the commission of the offence to a person predisposed to commit a crime." That language, reflecting Government investigative prerogatives, is taken directly from the Government's proposed charge. The charge must be balanced, and therefore, the Government cannot ask the Court only to instruct on Government prerogatives without also instructing on the need for government restraint.

  Additionally, the Government objects to the word "zeal" as carrying "a negative connotation." The Government also states that the word will "inflame the passions of the jury." One would hope that Government agents would be "zealous" in their efforts to enforce the law, as one hopes Government agents are zealous in pursuing all worthy goals. Moreover, it is difficult to take the argument seriously when the same Government has imported a shoulder-fired missile into the United States for the sole purpose of presenting that missile to this jury (as it intends to do during summation). To have the Government now complain about the propensity of a word to "inflam[e] the passions of the jury" is remarkable.

Honorable Katharine S. Hayden
United States District Court
February 18, 2005
Page 5

7.  Third Circuit Caselaw Does Not Preclude Additional Factors from Jury Instruction

The Government objects to two additional factors (labelled 6 and 7) beyond the five factors cited commonly in Third Circuit and other case law. These factors are taken directly from the Seventh Circuit's pattern charge previously supplied to the Court. The Government provides no argument as to why these relevant factors should not be considered by the jury and instead suggests that Third Circuit law bars them. Of course, Third Circuit law has consistently identified five relevant factors but has never purported to bar these or any other factors suggested by Lakhani.

8.  "Positional Force" Instruction Is Relevant to the Facts of This Case and Has Not Been Rejected by Third Circuit

The Government's last objection is to what it terms the "defendant's novel positional force requirement." The proposed instruction was neither created by defendant, nor is it novel, nor is it a requirement. To object to the instruction, the Government must mischaracterize it. The "positional force" instruction, inspired by United States v. Hollingsworth, 27 F.3d 1196 (7th Circuit 1994) (en banc) and quoted in the Seventh Circuit pattern charge on entrapment, is based entirely on the logic of the entrapment defense, as well as the facts of this case.

While the Government correctly states that the "positional force" factor has never been "accepted by our own Circuit," more significantly, it has never been rejected. For this Court to utilize the factor in Lakhani would be to apply a logical, relevant, and persuasive rationale from the Seventh Circuit. Additionally, the Government overstates the reception that Hollingsworth has been given in other circuits. The Government erroneously states (at page 7) that Hollingsworth has been "rejected by several other circuits." This is simply wrong. While the Ninth Circuit has specifically rejected Hollingsworth, no other Circuit has done so. Indeed, Hollingsworth has been cited with approval in both the Fifth, First and Second Circuits. The Fifth Circuit subsequently determined that it, as a Circuit, would not decide whether Hollingsworth should be adopted. Likewise, the Second and Forth Circuits reached a similar position. See e.g., United States v. Bala, 236 F.3d 87, 94 (2nd Cir. 2000) ("We hold that the Seventh Circuit standard does not benefit [defendant] because the government presented sufficient evidence that [defendant], albeit a novice money launderer, previously formed the necessary intent to participate in the crime."); United States v. Squillacote, 221 F.3d 542, 567 (4th Cir. 2000) ("We need not, however, decide whether predisposition includes a positional element because even under the Hollingsworth formulation, [defendant] clearly was in the position to commit the crimes with which she was charged."); United States v. Ogle, 328 F.3d 182, 189 (5th Cir. 2003) ("[W]e find it unnecessary here to recognize the doctrine of predisposition. . . .")

Honorable Katharine S. Hayden
United States District Court
February 18, 2005
Page 6

The United States Supreme Court defined entrapment as "the apprehension of an otherwise law-abiding citizen who, if left to his own devices, likely would never have run afoul of the law." Jacobson v. United States, 503 U.S. 540, 553-554, 112 S.Ct. 1535, 1543 (1992). The Hollingsworth court believed if the same could have been "said of [defendants,] they too [were] entitled to be acquitted. Their willingness to commit the crimes to which the government invited them cannot be decisive." Hollingsworth, supra, 27 F. 3d at 1199. Judge Posner, the author of the en banc decision, determined "[p]redisposition requires more." Id. He stated that predisposition was "not purely a mental state. It has positional as well as dispositional force." Id. at 1200. Therefore, the defendant "must be so situated by reason of previous training or experience or occupation or acquaintances that it is likely if the government had not induced him to commit the crime some criminal would have done so." Id. If, and only if, a defendant is so situated, then a "sting or other arranged crime [will] take a dangerous person out of commission." Id.

Who is taken out of commission when the government's efforts focus on someone not so situated? Judge Posner described the defendants in Hollingsworth, as wannabe international financiers -- "a vocation for which neither had any training, contacts or experience." Id. at 1200. They had "no prayer of becoming money launderers without the government's aid." Id. at 1202. In fact, if the government had not responded, the defendants would have been left with no recourse but to close up their failing venture to avoid further financial ruin. Id. In a passage pertaining to one of the defendants, Judge Posner paints a picture strikingly similar to that of Lakhani: "[The defendant] was a threat to himself and his family. He was never a threat to society." Id. He concluded, "[e]ven if they had wanted to go into money laundering before they met [the agent] – and there [was] no evidence that they did – the likelihood that they could have done so was remote. They were objectively harmless." Id.

The Government fundamentally misunderstands the nature of predisposition by analogizing Lakhani to a "gun dealer," as opposed to the money launderers in Hollingsworth. At page 14, the Government cites evidence of Lakhani's alleged arms dealing since the late 1990's. Even if Lakhani's own boasts about his relationships with Ukrspetsexport, a Ukrainian arms company, and Omnipol, a Czech Republic arms manufacturer, are true, they do not constitute evidence of illegal arms trafficking, moreover they do not constitute evidence that he was an arms dealer, at all. As Supreme Court and other case law make clear, the focus in predisposition must necessarily be on a defendant's prior illegal activity, as opposed to legal activity. Jacobson, supra, 503 U.S. at 550-551, 112 S.Ct. at 1541-1542. One who conducts his affairs legally cannot be said to be predisposed to conduct illegal activity. For example, a pharmacist is not predisposed to be a drug dealer. A drug dealer is predisposed to be a drug dealer.

Honorable Katharine S. Hayden
United States District Court
February 18, 2005
Page 7

      The Government's argument that "positional force" only applies to completed crimes, as opposed to the attempt defenses alleged in the Superseding Indictment, is logically infirm. "Positional force" can only be relevant in a case where the defendant is not capable of completing the crime and thus would never apply to a completed crime. In fact, the crime in <u>Hollingsworth</u>, itself, was never completed, because it could not have been. By his nature, a defendant lacking the positional force to complete a crime would never be able to complete the crime. If he could, then he would be denied the benefit of this instruction.

      The Government's final objection is that the inclusion of a positional force element would result in a "manifest injustice." No explanation is given for this assertion. The cases cited by the Government are cases in which an entrapment instruction plainly did not apply to the facts developed. That is not the case here. Simply put, the Government does not want the Court to give a positional force instruction because the Government's own proofs establish that defendant Lakhani lacked the position or ability to conduct, not to mention complete, the crime charged. If this were not the case, why then did the Government (in concert with Russian authorities) take it upon itself to complete the crime charged?

      The defendant's positional force or ability to participate in this criminal activity in a meaningful way is undoubtedly relevant to the issue of predisposition and entrapment. If it is relevant, then most respectfully, the defendant asserts that it should be charged to the jury in expressed terms by the Court.

      Thank you for your consideration.

                              Respectfully submitted,

                              KLINGEMAN TURANO LLC

                              <u>/s/ Henry E. Klingeman (HK 6007)</u>
                              Klingeman Turano LLC
                              230 Main Street, 2nd Floor
                              Madison, NJ 07940
                              TEL 973-236-0114
                              FAX 973-236-0012
                              EMAIL hek@ktlawyers.com

cc:      AUSA Stuart J. Rabner
          AUSA Brian R. Howe
          AUSA Sabrina G. Comizzoli
          Mr. Hemant Lakhani