# KLINGEMAN TURANO LLC
―――――――――――――ATTORNEYS AT LAW―――――――――――――

HENRY E. KLINGEMAN**[*][+]**  
STEPHEN TURANO[°]  
Of Counsel  
KARIN S. RIECKER[°]  
NANCY M. KLINGEMAN  

*Admitted, NJ, PA & HI  
+Certified by the Supreme Court of  
  New Jersey as a Criminal Trial Attorney  
°Admitted, NJ & NY  

**Document Electronically Filed**

230 MAIN STREET  
SECOND FLOOR  
MADISON, NEW JERSEY 07940  
TEL: (973) 236-0010  
FAX: (973) 236-0012  
www.ktlawyers.com  

February 24, 2005

Writer's Direct Line:  
(973) 236-0114  

Writer's E-Mail Address:  
hek@ktlawyers.com  

Honorable Katharine S. Hayden  
United States District Court  
United States Post Office and Courthouse  
Federal Square  
Newark, NJ 07101  

      Re:    United States v. Hemant Lakhani  
               Crim. No. 03-880 (KSH)

Dear Judge Hayden:

    Please accept this letter in lieu of a more formal brief responding to the Government's February 24, 2005 letter.

    First, the Government asserts that we have "fundamentally misinterpreted the 'positional force' theory set forth in United States v. Hollingsworth." (Feb. 24, 2005 Gov't Letter at 1) As we first cited this case and provided the Court with a copy, we leave it to Your Honor to determine who has misinterpreted the case. We take sharp issue, however, with the Government's allegation that defendant Hemant Lakhani "was an arms dealer who was already positioned to become an illegal arms dealer." (Feb. 24, 2005 Gov't Letter at 1) (emphasis original) The trial record to date — consisting entirely of evidence introduced in the Government's case-in-chief — establishes beyond any doubt that Lakhani was neither an arms dealer nor positioned to become an illegal arms dealer.[1] While summation is the opportunity to set forth more fully the evidence on this point, the most compelling evidence of it arises out of the indisputable reality that the Government completed this offense only after Mr. Lakhani's year-long efforts failed completely. Additionally, Mr. Lakhani participated in the sale of armored vehicles by the Ukrainian

---

[1] In any event, when considering whether to give an entrapment instruction, "[t]he evidence must be viewed in the light most favorable to the defendant." United States v. Ryan, 289 F.3d 1339, 1344 (11th Cir. 2002); see also United States v. Anglada, 524 F.2d 296, 298 (2nd Cir. 1975).

Honorable Katharine S. Hayden
United States District Court
February 24, 2005
Page 2

state-run manufacturer to the government of Angola in a single, contemporaneous, and legal transaction. Thus, based on the Government's own evidence and investigation, not only is there ample reason to conclude that Mr. Lakhani was incapable of completing the transaction for the shoulder-launched missile, there is equal basis to conclude that he was no arms dealer before being approached by the Government's informant.

Second, the Government asserts that we have "implied" that other circuit courts have adopted the positional force theory. (Feb. 24, 2005 Gov't Letter at 2) Rather, we corrected the Government's erroneous assertion in its opening brief (Feb. 15, 2005 Gov't Letter at 7, 12-14) that a number of circuits have rejected the theory. Only the Ninth Circuit has rejected the theory; the circuits cited by the defense have made no precedential determination as to the theory's viability in those jurisdictions. Instead, several courts of appeal have assumed the viability of the theory when rejecting the defendant's entitlement to its application in each particular case. Unlike the Government, the defense has taken great pains not to overstate the favorability of existing law to its position.

Third, the Government states that it "has never taken the position that the positional force theory only applies to completed crimes." (Feb. 24, 2005 Gov't Letter at 2) While the Government is entitled to change its position as it sees fit, the defense (and the Court, for that matter) can only rely upon the submissions of the Government to determine the Government's position. In the Government's February 15, 2005 letter at page 15, the Government expressly states, "Judge Posner's 'positional force' theory only seems to make sense, if at all, in the context of a completed crime."

Fourth, in its initial submission, the Government indicates that this Court, operating in the Third Circuit, is restricted to only the five so-called Fedroff factors. (Feb. 15, 2005 Gov't Letter at 3-7) Now that the defense has accurately pointed out that no Third Circuit case has ever stated that the Fedroff factors are the only factors that may be considered in evaluating an entrapment defense, the Government has narrowed its precedent-based contentions. The Government now says (correctly) that the Third Circuit "has never modified or expanded the five factors it commits the fact finder to consider in determining predisposition nor has the Third Circuit ever stated that the list of five factors is not exclusive." (Feb. 24, 2005 Gov't Letter at 2) Of course, the Third Circuit also has never stated that the Fedroff factors are exclusive and that no other factors are relevant. Such an assertion, given the fact-intensive nature of an entrapment defense, would be illogical. Thus, the Court should tailor the entrapment charge to the facts of this case.

Fifth, the Government continues to insist that the phrase "criminal activity for profit" applies to the defendant's activity as alleged in the charges before the jury and not prior activity, if any. (Feb. 24, 2005 Gov't Letter at 3) Nowhere, however, does the Government explain how this question of profit, to the extent it is confined to the activity

Honorable Katharine S. Hayden
United States District Court
February 24, 2005
Page 3

giving rise to the charges, is relevant. For example, if Mr. Lakhani committed the activity alleged in the Superseding Indictment for profit, does that make him more or less predisposed? Instead, whether the defendant has committed criminal activity in the past for profit is relevant to predisposition, not merely because it suggests prior criminal activity (and thus predisposition), but because it suggests a motive for him to commit criminal activity. Motive is relevant to entrapment, because it bears on the inducement prong, as well as predisposition.

Sixth, the Government continues to object to the word "zeal" as used in the defendant's proposed charge. (Feb. 24, 2005 Gov't Letter at 3-4) To bolster its argument, the Government erroneously states that we claim that the word "zeal" appeared in the jury charge in the Jacobson case. As the defendant's proposed entrapment charge makes clear, the word "zeal" appears in a quotation taken from the Jacobson opinion, not from the jury charge in Jacobson. To bridge the gap, however, the defense will consent to a synonym for zeal, such as "enthusiasm" or "efforts."

Seventh, as the Government recognizes, the defense has dropped its request that "economic status" be included in the charge. While economic status is undoubtedly relevant, we seek to accommodate the Government's objections and lessen the burden on the Court in drafting the final charge.

Hoping that the need for written submissions has reached an end, we will be prepared to address these issues and any others of concern to the Court at the oral argument Monday morning.

Thank you for your consideration.

Respectfully submitted,

KLINGEMAN TURANO LLC

/s/ Henry E. Klingeman (HK 6007)
Klingeman Turano LLC
230 Main Street, 2nd Floor
Madison, NJ 07940
TEL 973-236-0114
FAX 973-236-0012
EMAIL hek@ktlawyers.com

cc: AUSA Sabrina G. Comizzoli
    AUSA Stuart J. Rabner
    AUSA Brian R. Howe
    Mr. Hemant Lakhani