1/3

dtc 6th Dec 2011.

FROM: H Lakhani, esq,
Reg: 257530-50
        M.C.F.P.
        4300-Springfield.
        M.O. 65801.

TO: Michael F. Rivera, Esq,
        In Court Supervisor,
        U.S.D.C.,
        Newark. NJ.

RE: USA V. Lakhani. Crim-03-880-(KSH)

DEAR MR RIVERA,
                I am pleased to enclose herewith
a copy of a court Transcript of a Testimony given by
Ms. Susan Corrado, a private Investigator employed
by Klingman for my Trial.
                Needless to say that such private Inves-
tigator are routinely Hired by the Defense Lawyer on behalf
of their clients for effective investigation which has
increasingly become a vital Tool for defense's strategy.
Klingman strongly recommended Her and personally brought
Her at Passaic County Jail [ See attached Invoice p No 9
dec. 17th. 03 - whilest Klingman was a paid Lawyer at 400 dollar. P.H.
for me] Heither, Klingman nor Ms. Corrado revealed at any
given time that she was working directly with James Tarrece,
F.B.I official, Counter-Terrorism Unit, Newark, NJ, who was in
charge of my investigation. She was paid US.90 P.H.

In essence, she was costing me 490 dollar P.H because, after each meeting with me at Passaic County Jail, she would run to Klingman's office and discuss the whole thing all over again. Her Top assignment was together more information on C.W. and his family. She reported to me in her next meeting that CW doesn't live in N.J. but he lives in Mid-West AREA, either Minneapolis or around. I told her to take a Trip to mid-west and gave her the names of his (CW's) contact as well. She would always reply to me that she would talk to Klingman about her Trip and let me know — The same story repeated on all of my other "Assignments" which I had given to Her. After Few Weeks, I got fedup with her and told Klingman, that I am not getting anywhere with Her and since it is costing me a lot of money, I think we should tell her to go. Period. In the meantime, both Klingman and Her, knew Lakhani's strength and strong points for defense, which were totally obscured at the Trial.

Although, Klingman didn't have any decency to inform me either before or during the Trial that He intends to call MS CORRADO as defense witness. When you will read this Transcript, it is so insulting to the Legal profession to ask Her to Testify and to Tell the Members of the Jury — about "INTERNET and Google" — In India, at Benglore [Silicon Vally] every 5 year old boys can Tell you what is "INTERNET" — In a high profile Criminal Trial, you don't employ a private Investigator to explain what is INTERNET — The whole episode costed us several Thousands dollar — I would'nt employed her—had I known that she worked for FBI!

In FACT, Klingman could or should have asked her about C.W.'s domicile at the time she discovered in November 03 — to challenge the Government that July 25th 01 memo — written by Ms. McGrath and her Testimony at the Trial cannot be TRUE. Ms. Corrado, was't asked this question as Klingman conveniently and candidly avoided all most all important issues which were highly vITAL for my Trial.

Even To those accustomed to sins of New Jersey Lawyers [ Paul Bergin — the former A.Us.A. Newark] — The Latest Trial and Tribulations of Lakhani by Henry Klingman, a court-appointed counsel, may Have Hit the New Low in Terms of disloyalty and dishonesty.

Mr. Rivora — Thank You for your attention and please be So Kind to reply to my letter —

Submitted respectfully,

Enclo 1 H. (Transcript)                    H. Lakhea.

P.S. Kindly pass to Mr Walsh — the clerk, the enclosed letter addressed to him — you may also inform him about the content of this letter addressed To You — He must know, what Klingman is capable to do —!!

Lakhani, Hemant
Lakhani, Hemant

December 17, 2003
Page 9

*[handwritten: THiRusdAy]*  Tel (10)  co-counsel Dennis Driscoll re: status; telephone conference with co-counsel Dennis Driscoll re: status; telephone conference with defendant Hemant Lakhani re: London trip/status
Worked 1.40 hours at $400.00 per hour

| | | | | |
|---|---|---|---|---|
| 10/30/03 | HEK *[handwritten: Tel (11)]* | Telephone conference with defendant Hemant Lakhani re: November trip to London; telephone conference with Sanjay Lakhani (defendant's son) re: same | 0.40 | 160.00 |

*[handwritten: THiRusdAy]*
Worked 0.40 hours at $400.00 per hour

| | | | | |
|---|---|---|---|---|
| 11/02/03 | HEK | Research re: Russian Federation Security Police ("FSB"); legal research re: entrapment | 2.90 | 1,160.00 |

*[handwritten: SuNdAy]*
Worked 2.90 hours at $400.00 per hour

*[handwritten: CAH I pleas See this documents fOR STudy and kNowledge]*

| | | | | |
|---|---|---|---|---|
| 11/03/03 | HEK | Conference with defendant Hemant Lakhani and private investigator Susan Corrado at Passaic County Jail re: confidential informant/status/strategy (travel to/from Passaic County Jail); telephone conference with Assistant United States Attorneys Jeffrey Clark and Brian Howe re: continuance/handwriting exemplars/document inspection | 3.40 | 1,360.00 |

*[handwritten: First (14) MONdAy]*

*[handwritten: 1/3]*
*[handwritten: BREAKdown of Lakhani, — 1/3 — 440 / Susan Corrado — 1/3 — 440 / His ATToRNEy — 1/3 — 440]*

Worked 3.40 hours at $400.00 per hour

| | | | | |
|---|---|---|---|---|
| 11/03/03 | HEK | Telephone conference with private investigator Susan Corrado re: November 3, 2003 interview of Lakhani; review Government proposed continuance order | 0.50 | 200.00 |

*[handwritten: MONdAy]*
Worked 0.50 hours at $400.00 per hour

| | | | | |
|---|---|---|---|---|
| 11/04/03 | HEK | Telephone conference with co-counsel Dennis Driscoll re: status | 0.10 | 40.00 |

*[handwritten: TuesdAy]*
Worked 0.10 hours at $400.00 per hour

| | | | | |
|---|---|---|---|---|
| 11/04/03 | HEK *[handwritten: Tel (12)]* | Telephone conference with defendant Hemant Lakhani re: private investigator/bail/investigative trip to London, England | 0.30 | 120.00 |

*[handwritten: TuesdAy]*
Worked 0.30 hours at $400.00 per hour

| | | | | |
|---|---|---|---|---|
| 11/06/03 | HEK | Telephone conference with Kusum Lakhani re: retention of private investigator | 0.20 | 80.00 |

*[handwritten: THiRusdAy]*
Worked 0.20 hours at $400.00 per hour

146

THE COURT: We will have her sworn in.

MS. GUILLOTY: Would you raise your right hand please.

SUSAN CORRADO, the witness herein, having been first duly sworn by the Courtroom Deputy was examined and testified as follows:

THE WITNESS: Yes, I do.

MS. GUILLOTY: The witness is sworn, please be seated. Give your full name and spell it for the record please.

THE WITNESS: Yes. Susan Corrado C O R R A D O.

THE COURT: Your witness, Mr. Klingeman.

DIRECT EXAMINATION

BY MR. KLINGEMAN:

Q. Ms. Corrado, what do you do for work?

A. I am a private investigator. I have an investigative services firm.

Q. Prior to being a private investigator, what did you do for work?

A. I was a Special Agent for the Federal Bureau of Investigation.

Q. The FBI?

A. Yes.

Q. And where were you assigned when you were a special agent to the FBI?

147

A.    I was assigned to the Newark New Jersey division.

Q.    Right here in this town?

A.    That's correct.

Q.    Did you work along side some of the folks that work on this case?

A.    Yes, I did very closely. → FBI Group in charge of my investigation

Q.    And you recognize some of the people here in the courtroom?

A.    Yes, I do.

Q.    Now have I asked you to assist me in an investigative aspect of this case?

A.    Yes, you have.

Q.    Specifically what did I ask you to do?

A.    You gave me several tasks to do.  One of which is why I am here today.

Q.    What is that?

A.    That is-- I did an internet search of a company by the name of Ukrspetsexport.  And I did that search through a search engine by the name of Goggle that is a very popular search engine.

Q.    Okay.  Can you just explain to the members of the jury what the internet is?

A.    The internet is a collection-- a collection or body of information.  A search engine is a way to gather information, in a very-- usually a very quick and easy way to gather

U.S. DISTRICT COURT, NEWARK, NEW JERSEY 07101

Tell me mr Rivera: WHAT Secret do I have—!

*Mr. Rivera*

*In fact Klingman cheated on me. by employing her _ and not to tell me about FBI _ connection it is a "Betryal" unforgivable*

148

information.

Q. And specifically the search engine that you've used is called Goggle?

A. That's correct.

Q. And I have written up on the easel WWW.Goggle.com.

A. Yes, you have.

Q. And it that the internet address that you used to reach the search engine?

A. Yes, it was.

Q. What is the search term that I asked you to use to search?

A. Ukrspetsexport.

Q. I have written the name Ukrspetsexport on the easel as it is typed in?

A. Yes, that's correct.

Q. Do you know from what you know about this case that Ukrspetsexport is a company name that has come up during the course of the investigation and the trial of the case?

A. Yes, I do. Yes.

Q. What was the result when you put Ukrspetsexport into Goggle and searched on it?

A. I received over 1000 hits. A hit is-- a response to my search. I obviously didn't go through all the 1000.

Q. What was the very first hit that you got?

A. The very first hit was the actual site for the company,

for that company.

Q.   And did you visit that website?

A.   Yes, I did.

Q.   And look through some of the pages?

A.   Yes, I did.

Q.   I would like to show what has been marked for identification as Defendant's Exhibit 6.  Please take a look at it.

A.   Yes, I have it.

Q.   Do you recognize it?

A.   Yes, I do.

Q.   How do you recognize it?

A.   This is the exact search that I performed.

Q.   And those are printouts from the computer?

A.   Yes, it is.

Q.   And does it include images in hard copy form of the computer screens that took you initially to Goggle and then to the list of sites and then on to the Ukrspetsexport website?

A.   Yes, it does.

Q.   And also has some images from the Ukrspetsexport website?

A.   Yes, it does.

Q.   Is that Defense Exhibit 6 in the same condition it was in when you did this internet search?

150

A.    Yes, it is.

Q.    And does its fairly and accurately depict the screen images that you observed when sitting in front of the computer?

A.    Yes, it does.

MR. KLINGEMAN:  At this time I offer Defendant's 6 in evidence.

MR. RABNER:  No objection.

THE COURT:  In evidence then.

(SO MARKED).

Q.    I will put it up on the screen so we can all see it and ask you to briefly-- briefly take us through the search.

A.    Yes.

Q.    Okay.  I draw your attention to the bottom of the Defense 6.  Can you tell us what this is?

A.    This is the web address for Goggle.

Q.    And this image is what?

A.    This is the entering of the search term into the Goggle search engine.

Q.    So you would have typed the word Ukrspetsexport where it is written in this box?

A.    That's correct.

Q.    And when you hit one of these two buttons, what happens?

A.    The Goggle goes into its, you know, it works through the

151

system trying to find words or text that matches that name. And then it will come up with it's called a hit list. And it is a listing of all of the websites or articles that mention this name.

Q. Did you printout the first page of the hit list with approximately ten entries on it?

A. Yes, I did.

Q. I have turned to the second page of the exhibit over. And what does it say at the top here?

A. This is says results, it is one of ten with 1,380 hits for the term Ukrspetsexport.

Q. And we have highlighted the very first hit?

A. Yes, we have.

Q. Now are you able to do anything with the computer, to go from this list to this-- this entry on the list here to a web page?

A. Yes, you simply click on. In fact in this situation I-- for some reason it didn't let me click on this Used Weapon.UA. It is actually the web address for this company. But when I clicked on welcome to Ukrspetsexport this brought me up to their website.

Q. Okay. So when you say welcome to Ukrspetsexport you are talking about the area I am indicating with the pencil?

A. That's correct (indicating).

Q. Now did you reach the front page of the website?

152

A.   Yes.   This is what they commonly call the home page. This is usually the first page.   It gives you an overview of what else is on this website.   And just allows the reader to sort of get an overview of what is to come.

Q.   And it includes a description of the company?

A.   Yes, it does.

Q.   And it starts out with the state company, for export and import of military and special products and services, is the only organization authorized by the Ukrainian government to implement, export potential military industrial complex of the Ukraine?

A.   Yes, it does.

Q.   And then down here on the lower left there is a address and contact information?

A.   Yes.

Q.   Now, were you able to click on any other items to get more information?

A.   Yes.   Next I clicked on products.   If you look at the top.

Q.   The top in the middle?

A.   That is right.

Q.   What did that lead to?

A.   That led to a listing of all of the products offered by the company.

Q.   Okay.   And have I put the right page up on the screen?

1/2

dt:- 6th Dec 2011.

FROM: H Lakhani esq

Reg: 257530-50

H.C.F.P.

4000- Springfield

M.O. 65801

Confidential

Recorded Delivery

TO: William T. Walsh, clerk,

OFFICE OF THE Clerk,

United States District Court,

District of New Jersey,

NEWARK. N.J. 07101-0419

RE: USA v LAKHANI CRIM. 03-.880 (KSH)

DEAR MR WALSH,

The purpose of this letter is to Find out about the primary investigative responsibilities of your office for the alloged Misconduct by the court appointed counsel, Henry Klingman, who handled my Trial and direct Appeal.

Hetherto, I HAVE been able to provide to your Court, by way of "documentary Evidence" on various episodes, which need to be investigated as it envolves Criminal Misconduct as well as Non-Criminal act of wrongdoing, i.e unacceptable aweful Lawering etc

[i]t seems that courts attitude appears to "SHIELD" klingman as opposed to regulating with him and viewing him as client as opposed to court appointed counsel or entity in default, that needed to comply.

I consider, court's in action as a symbol of weak enforcement — it does't do much in the way of deterence and it does't do much in the way of punishment in furthence of course of Justice

[i]t seems, an Act of PERJURY presenting false Evidence does't constitute an criminal offense— it simply stretches the "TRUTH" —. To claim that klingman's multiple violations of the same laws are FREAKISH COINCIDENCE,

Henry Klingman — as criminal defense Lawyer has lost it's apparent Risk Free status as credible attorney — End To this Fiction — To restore Confidence — The court needs to move from denial To recognition

MR Walsh, SiR, Please be so kind to reply your court views on my grievances, which hethefo, I have so humbly explained to your court, for my redress.

THANKING you SiR, and For your understanding.

submitted respectfully

sHaKHay

1/1

dt:- 6th Dec 2011

FROM: H LAKHANI. esq,
Reg: 257530-50,
     M.C. F.P
     4000- SpringField,         RECorded Delivery
     M.O. 65801

TO: Michael E. RiverA, Esq,
    IN- COURT SUPERVISOR,
    U.S.D.C.,
    NEWARK. N.J.

Re: U.S.A. V. LAKHANI Crim, 330 - 03 (KSH)
TRANSCRIPT - ORDER

DEAR MR, RiverA,
    I am referring to your letter dated
11th DCT OII. in which you advised ME that MR FLORIO
will deal with my request for ordering "TRANSCRIPT".
    As of To-day, I HAVE't heard from
him. Would you be so kind to remind him and should
there be any problem, please kindly ask him to write
to ME so that I can iron out problem, if any, for
this matter, but I do Head to know your Court's decision,
    THANKing you For your understanding.
    submitted respectfully
    H Lakhan..